# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMY PINSON, | Civil No. 3:16-cv-1232 |
| Plaintiff | (Judge Mariani) |
| v. | |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants | |

## MEMORANDUM

Plaintiff Jeremy Pinson ("Plaintiff"), a federal inmate who is currently housed at the United States Penitentiary in Tucson, Arizona, initiated this action pursuant to *Bivens*, 28 U.S.C. § 1331, and the Federal Tort Claims Act ("FTCA"). The matter is proceeding via a second amended complaint. (Doc. 51). Named as Defendants are Warden L. Oddo, Warden T. Cozza-Rhodes, Chief of the Designation and Sentence Computation Center ("DSCC") J. Santana, Special Investigative Services ("SIS") Lieutenant S. Valencik, Special Investigative Agent ("SIA") C. Heath, the Bureau of Prisons ("BOP"), and the United States of America. (*Id.*).

Presently pending before the Court is Plaintiff's motion to compel discovery. (Doc. 73). For the reasons set forth below, the Court will deny the motion.

I. **Standard of Review**

A party who has received evasive or incomplete discovery responses may seek a

court order compelling disclosure or discovery of the materials sought. See FED. R. CIV. P. 37(a). The moving party must demonstrate the relevance of the information sought to a particular claim or defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 349 U.S. 495, 501 (1947). The procedural rule defining the scope and limits of discovery provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.2d 57, 65 (3d Cir. 2000). Furthermore, the court may limit discovery where: "(i)

the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(c).

## II. Discussion

In the instant motion, Plaintiff requests that the Court: (1) compel Defendants to respond to his second set of discovery requests; and, (2) compel Defendants to further respond to his original discovery requests. (Doc. 74, pp. 1-3).

### A. Second Set of Discovery Requests

On April 1, 2019, the Court ordered that "[d]iscovery on the issues of exhaustion of administrative remedies and personal jurisdiction shall be completed on or before April 29, 2019." (Doc. 71, ¶ 2). Plaintiff states that on April 30, 2019, past the discovery deadline, he mailed a second set of discovery requests to Defendants. (Doc. 74, pp. 1, 4). On May 15, 2019, Defendants responded and objected to the discovery requests as untimely. (*Id.* at p. 7).

It is clear that Plaintiff's second set of discovery requests, mailed on April 30, 2019, were untimely under the Court's Order. The April 1, 2019 Order clearly states that discovery "shall be completed on or before April 29, 2019." (Doc. 71, ¶ 2). Plaintiff appears

to concede his untimeliness, explaining that he was placed on suicide watch on April 20, and had no access to writing instruments. (Doc. 74, p. 1). In response, Defendants argue that Plaintiff could have mailed the discovery requests at any time prior to April 20, and, furthermore, their responses were due after the Scheduling Order's deadline. (Doc. 81, pp. 5-6).

A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The Court also has authority under Rules 33(b)(2) and 34(b)(2)(A) to shorten the time for responses to interrogatories and requests for production of documents. See FED. R. CIV. P. 33(b)(2), 34(b)(2)(A). Courts have applied the general Rule 16 good cause standard when considering requests to alter discovery deadlines. Good cause under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order. See FED. R. CIV. P. 16, Advisory Committee Note (1983) ("the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension").

Here, the Court finds that Plaintiff has not made this showing. Plaintiff timely served his original discovery requests. Plaintiff could have, but did not, serve his additional discovery requests in time to be completed prior to the deadline set by the Court. Because Plaintiff's second set of discovery requests were untimely, the Court will not compel Defendants to respond those discovery requests.

### B. Original Discovery Requests

Plaintiff claims that Defendants' responses to his original discovery requests "are a disingenuous attempt to stonewall discovery of the records necessary to defeat their claims of non-exhaustion and lack of jurisdiction." (Doc. 74, p. 2). He generally states that "Defendants refuse to reveal any disclosure of information which undermines their defenses and is improper, sanctionable, obstruction of this lawsuit." (*Id.*). Plaintiff does not specifically state which responses he is challenging.

Upon review of Plaintiff's original discovery requests, the Court concludes that the requests are beyond the scope of this Court's Order of April 1, 2019, and, furthermore, that Defendants have adequately responded to Plaintiff's requests.[1] (*See* Doc. 74, pp. 5-35). Accordingly, the motion to compel as to the original discovery requests will be denied.

### A. Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories

Plaintiff's first set of interrogatories consists of six questions. (Doc. 74, pp. 8-15). The questions request information regarding the actions of Defendants Cozza-Rhodes and Santana during Plaintiff's transfer to USP-Allenwood. (*Id.*). Defendants objected to each interrogatory as not within the scope of this Court's Order of April 1, 2019, which limited discovery to exhaustion of administrative remedies and personal jurisdiction. (*Id.*).

---

[1] Defendants supported their responses with signed verification pages indicating that their responses are true and correct. (Doc. 74, pp. 16-17, 27-28, 35-36).

However, Defendants also provided a response to each question, except question number five. (*Id.*).

In question number five, Plaintiff stated: "Please identify every single staff member involved in transferring the plaintiff from USP Florence to USP Allenwood[.]" (*Id.* at p. 13). Defendants objected and stated that neither of the individual Defendants could respond, as the information sought was beyond their knowledge, and, furthermore, the requested information was overly burdensome. (*Id.*). It is reasonable to conclude that Defendants Cozza-Rhodes and Santana, in their individual capacity, could not secure and provide this information to Plaintiff. The Court finds Plaintiff's interrogatories are beyond the scope of this Court's Order of April 1, 2019. Nevertheless, upon review of Defendants' responses (*see* Doc. 74, pp. 9-15), they have provided adequate and complete responses to Plaintiff's interrogatories.

### B.  Defendants' Responses and Objections to Plaintiff's First Request for Admissions

Plaintiff served Defendants with eight requests for admissions. (Doc. 74, pp. 20-29). Defendants objected to each request as not within the scope of this Court's Order of April 1, 2019. (*Id.*). Defendants also provided responses to requests three through eight. (*Id.*).

The first two requests pertain to whether Defendants Cozza-Rhodes and Santana were employed by the Bureau of Prisons and/or the United States prior to March 8, 2016. (*Id.* at pp. 20-21). The remaining requests for admissions pertain to Plaintiff's transfer from

6

USP-Florence to USP-Allenwood, and Defendants' communication with individuals in Pennsylvania during the transfer process. (*Id.* at pp. 22-26). Defendants Cozza-Rhodes and Santana responded that they had no phone, email, text, or video-conference communication with anyone in Pennsylvania, nor did they give any direction to staff to communicate with anyone in Pennsylvania, concerning Plaintiff's transfer. (*Id.*). It is clear that Plaintiff's requests for admissions are not within the scope of the Court's Order limiting discovery to the issues of exhaustion and personal jurisdiction. In any event, Defendants provided adequate and complete responses to Plaintiff's requests for admissions.

### C. Defendants' Responses and Objections to Plaintiff's First Request for Documents

In his request for documents, Plaintiff set forth three requests. (Doc. 74, pp. 30-36). Defendants objected to each request as not within the scope of this Court's Order of April 1, 2019. (*Id.*). Defendants also provided a response to each request. (*Id.*).

In the first request, Plaintiff seeks "each BOP policy, program statement, regulation and procedure involved in transferring the plaintiff from USP Florence to USP Allenwood[.]" (*Id.* at p. 31). In response, Defendants represent that they provided Plaintiff with a copy of the relevant BOP policy. (*Id.*). Requests two and three seek copies of "every document, email, telephone call, memorandum, record, which was produced, by any person, in the process of" either "requesting to transfer plaintiff from USP Florence to USP Allenwood" or "transferring plaintiff from USP Florence to USP Allenwood." (*Id.* at pp. 32-36). Defendants

Cozza-Rhodes and Santana responded that they had no such documents to produce as they had no communication with anyone at USP-Allenwood or in Pennsylvania regarding Plaintiff's transfer. (*Id.* at pp. 32-34). Notwithstanding the fact that Plaintiff's requests are not within the scope of the Court's Order limiting discovery to the issues of exhaustion and personal jurisdiction, Defendants provided complete and accurate responses.

## III. Conclusion

Based on the foregoing, Plaintiff's motion (Doc. 73) to compel will be denied. A separate Order shall issue.

Date: August 23, 2019

Robert D. Mariani
United States District Judge