# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEREMY PINSON,                          :        Civil No. 3:16-cv-1232
                                        :
    Plaintiff                     :        (Judge Mariani)
                                        :
    v.                            :
                                        :
UNITED STATES OF AMERICA, et al.,       :
                                        :
    Defendants                    :

## MEMORANDUM

## I.    Background

Plaintiff Jeremy Pinson ("Pinson"), a federal inmate who is currently housed at the

United States Penitentiary in Tucson, Arizona, initiated this action pursuant to *Bivens*[1], 28

U.S.C. § 1331, and the Federal Tort Claims Act ("FTCA"). The matter is proceeding via a

second amended complaint. (Doc. 51). Named as Defendants are Warden L. Oddo,

Warden T. Cozza-Rhodes, Chief of the Designation and Sentence Computation Center J.

Santana, Special Investigative Services Lieutenant S. Valencik, Special Investigative Agent

("SIA") C. Heath, the Bureau of Prisons ("BOP"), and the United States of America. (*Id.*).

Presently pending before the Court is Defendants' motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b), and for summary judgment pursuant to Federal Rule

---

[1]  *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).
*Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally
protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an
award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478,
504 (1978).

of Civil Procedure 56.[2] (Doc. 64). The motion is ripe for resolution and, for the reasons set forth below, the Court will grant Defendants' motion.

## II. **Legal Standards**

### A. **Summary Judgment Standard of Review**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of

---

[2]    Because Defendants rely on documents outside the pleadings to support their argument regarding exhaustion of administrative remedies, the Court will address this argument under the summary judgment standard. By Order dated June 3, 2019, the parties were placed on notice that the Court may consider exhaustion in its role as fact finder under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013). (Doc. 75) (citing *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018)). The Order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 75; *see also* Docs. 88, 90).

2

the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the

non-moving party, and where the non-moving party's evidence contradicts the movant's,

then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am.,*

*Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## B. Motion to Dismiss Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

4

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.    Statement of Undisputed Facts[3]

---

[3]    Pinson filed a counterstatement of material facts (Doc. 92), however her statement of material facts fails to comply with Local Rule 56.1 which requires a party opposing a motion for summary judgment

## A. Background Facts Regarding Pinson

Pinson is a federal inmate who was previously housed at the United States Penitentiary in Florence, Colorado ("USP-Florence") from April 2, 2015 through March 8, 2016. (Doc. 66, Statement of Material Facts, ¶ 1). On March 8, 2016, Pinson was transferred to the United States Penitentiary, Allenwood, in White Deer, Pennsylvania ("USP-Allenwood"). (*Id.* at ¶ 2). Pinson was designated to USP-Allenwood from March 10, 2016 to July 18, 2016. (*Id.* at ¶ 3). On July 25, 2016, Pinson arrived at the United States Penitentiary in Terre Haute, Indiana ("USP-Terre Haute"), where she remained until February 15, 2018. (*Id.* at ¶ 4). On February 15, 2018, Pinson was transferred to USP-Tucson. (*Id.* at ¶ 5).

## B. Facts Regarding Defendants Cozza-Rhodes and Santana

Defendant Cozza-Rhodes was the Warden at USP-Florence at the time of the alleged events in Pinson's second amended complaint. (*Id.* at ¶ 6). Cozza-Rhodes'

___

to "include a separate, short and concise [responsive] statement of the material facts, responding to the numbered paragraphs set forth in" the movant's fact statement. *See* Local Rule 56.1. Pinson's responsive fact statement (Doc. 92) contains four paragraphs, and fails to correspond to the forty-seven paragraph concise statement of material facts filed by Defendants (Doc. 66). The averments of Pinson's responsive fact statements are entirely independent of those in Defendants' filing, and the numbered paragraphs of Pinson's submission do not correlate in any meaningful way to the paragraphs in Defendants' statement. In sum, Pinson's document does not comply with Local Rule 56.1's requirement of parity between the two filings. Therefore, as authorized by Local Rule 56. 1, the Court will admit as uncontroverted the statement of facts submitted by Defendants. *See* Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."). To the extent that Pinson's fact statements tangentially relate to Defendants' fact statements, the Court cites to Pinson's statement of facts.

business office is located in Aurora, Colorado. (*Id.* at ¶ 7). Cozza-Rhodes does not reside, work, or own property within the Commonwealth of Pennsylvania. (*Id.* at ¶ 8).

Defendant Santana was the Chief of the Designation and Sentence Computation Center in Grand Prairie, Texas, during the times relevant to Pinson's second amended complaint. (*Id.* at ¶ 9). At all times relevant to the second amended complaint, Santana's business office was in Grand Prairie, Texas. (*Id.* at ¶ 10). Santana does not reside, work, or own real property within the state of Pennsylvania. (*Id.* at ¶ 11).

## C. Facts Regarding Pinson's Administrative Remedy History

On November 6, 2018, a review of the BOP's computer generated Administrative Remedy Generalized Retrieval was performed. (*Id.* at ¶ 22). Due to the large number of administrative remedies filed by Pinson, the search was narrowed to March 1, 2016, the month she arrived at USP-Allenwood, through November 1, 2018, the month of the search. (*Id.* at ¶¶ 23-24). The search was further narrowed to include only those issues that pertained to Pinson's incarceration at USP-Allenwood. (*Id.* at ¶ 25). The limited search revealed that Pinson filed nineteen remedies regarding issues while housed at USP-Allenwood. (*Id.* at ¶ 26). Of those nineteen administrative remedies, one remedy requested a transfer to USP-Tuscon or USP-Terre Haute, six remedies pertained to DHO appeals, two remedies requested housing in Unit II, two remedies concerned Pinson's refusal to participate in the Financial Responsibility Program, two remedies sought alternate

7

medications and treatment by a doctor, one remedy pertained to a Special Housing Unit staff issue, three remedies pertained to sex reassignment surgery, and two remedies requested to be able to shave twice daily and use foundation. (*Id.* at ¶ 27). The only administrative remedies that could potentially be relevant to the claims set forth in Pinson's second amended complaint are the remedies pertaining to her request for a transfer and request to be housed in Unit II A. (*Id.* at ¶ 28).

On March 22, 2016, Pinson filed Administrative Remedy Number 855947-F1 at the institutional level requesting a transfer to USP-Tucson or USP-Terre Haute. (*Id.* at ¶ 29). The institution denied the remedy, and Pinson did not seek further review with the Regional Office or the Central Office. (Doc. 66, ¶ 30; Doc. 66-1, p. 60, Administrative Remedy Generalized Retrieval). No other administrative remedies were filed pertaining to Pinson's request to transfer to another institution. (Doc. 66, ¶ 30).

On May 23, 2016, Pinson filed Administrative Remedy Number 863257-F1, regarding her request to be housed in Unit II A. (*Id.* at ¶ 31). On June 2, 2016, Administrative Remedy Number 863257-F1 was closed with an explanation by the institution. (*Id.* at ¶ 32). On June 17, 2017, Pinson appealed to the Regional Office, designated as Administrative Remedy Number 863257-R1. (*Id.* at ¶ 31). On July 15, 2016, Administrative Remedy Number 863257-R1 was denied at the Regional Office level. (*Id.* at ¶ 33). Pinson did not file any other remedies pertaining to her request to be housed in Unit

8

II A. (*Id.* at ¶ 34).

### D. Facts Regarding Pinson's Administrative Tort Claim Remedies

On October 2, 2018, a search of Pinson's administrative tort claims was conducted, limited to claims that occurred at USP-Allenwood. (*Id.* at ¶¶ 37-38). The limited search revealed that Pinson filed four administrative tort claims. (*Id.* at ¶ 39).

On June 3, 2016, Pinson submitted claim number TRT-NER-2016-04489, alleging that staff was negligent when they gave her a razor, knowing she is mentally ill, which she then used to cut herself. (*Id.* at ¶ 40). On November 29, 2016, the BOP denied tort claim TRT-NER-2016-04489, after a review of medical records revealed that Pinson harmed herself by inserting foreign objects into her body, that she was provided with appropriate medical care, and that no evidence suggested she suffered a compensable loss as a result of the negligence of USP-Allenwood staff. (*Id.* at ¶ 41).

On or about June 22, 2016, Pinson submitted claim number TRT-NER-2016-04973, alleging that staff at USP-Allenwood sent her to an outside specialist who would not prescribe pain medications, which resulted in pain and suffering. (*Id.* at ¶ 42). On December 16, 2016, tort claim TRT-NER-2016-04973 was denied after a review of medical records indicated that, on June 17, 2016, Pinson was evaluated by a specialist and the specialist prescribed ibuprofen to treat her pain. (*Id.* at ¶ 43).

On March 20, 2017, Pinson submitted claim number TRT-NER2017-03396, wherein

she alleged that another inmate was threatening her for sex, and when she reported the threats to the staff at USP-Allenwood, the staff did nothing, resulting in Pinson being sexually assaulted. (*Id.* at ¶ 44; Doc. 92 ¶ 1). On September 7, 2017, tort claim TRT-NER-2017-03396 was denied due to a finding of insufficient evidence indicating that Pinson was assaulted by another inmate or that USP-Allenwood denied her protection from other inmates. (Doc. 66 ¶ 45; Doc. 92 ¶ 2).

On July 3, 2017, Pinson submitted claim number TRT-NER-2017-05395, stating that she sustained personal injuries when she attempted to remove her testicles and kill herself as a result of USP-Allenwood staff allowing her to keep a razor in her cell. (Doc. 66 ¶ 46). On December 22, 2017, tort claim TRT-NER-2017-05395 was denied after a review of Pinson's medical records failed to reveal that Pinson suffered a compensable loss as a result of the negligence of USP-Allenwood staff. (*Id.* at ¶ 47).

## IV. Discussion

Defendants seek dismissal of the complaint, and an entry of summary judgment, on the following grounds: (1) Pinson failed to exhaust her administrative remedies concerning the *Bivens* allegations against Defendants Valencik, Oddo, and Heath; (1) Pinson failed to allege sufficient personal involvement of Defendants Oddo and Santana; (2) the Court lacks personal jurisdiction over Defendants Cozza-Rhodes and Santana; and, (4) Pinson failed to exhaust her administrative tort claim remedies concerning the claims against the BOP and

10

the United States of America. (Doc. 65). The Court will first address Pinson's *Bivens* claims before turning to the FTCA claim.

## A.    *Bivens* Claims

The *Bivens* claims of the second amended complaint are as follows.

Pinson alleges that the BOP and its Transgender Executive Committee designated her to USP-Allenwood despite knowing that she must be separated from all members of the Mexican Mafia and Aryan Brotherhood. (Doc. 51, pp. 2-3).

Defendants Heath and Valencik ignored Pinson's pleas to be placed in protective custody. (*Id.* at p. 6). Defendants Heath and Valencik failed to follow BOP policy by not doing a Prison Rape Elimination Act investigation of Pinson's claim of sexual harassment by another inmate. (*Id.*). Defendant Valencik failed to follow BOP policy by not conducting a threat assessment when Pinson informed him that another inmate threatened her life. (*Id.*).

Defendant Cozza-Rhodes initiated Pinson's transfer from USP-Florence to USP-Allenwood in retaliation for Pinson assisting other inmates with filing lawsuits. (*Id.*). Defendant Cozza-Rhodes bribed other inmates to lie in order to obtain a verified threat assessment. (*Id.*). Defendant Cozza-Rhodes refused to stop Pinson's transfer to USP-Allenwood because she had signed the transfer request. (*Id.* at pp. 6-7).

### 1.    *Exhaustion of the Bivens Claims*[4]

---

[4]    The exhaustion procedures for BOP *Bivens* claims differ from those of the FTCA. Exhaustion for *Bivens* purposes requires completion of the BOP's Administrative Remedy Program, whereas the

Defendants argue that Pinson failed to exhaust her administrative remedies against

Valencik, Oddo, and Heath. (Doc. 65, pp. 15-19). Under the Prison Litigation Reform Act of

1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the

prison's grievance system before bringing a federal civil rights action concerning prison

conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000).

Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a). Pinson's Bivens claims fall within the ambit of the PLRA. See

Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a) applies equally to §

1983 actions and to Bivens actions.").

The PLRA "exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has

been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482

F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of

exhaustion procedures for administrative tort claims are set forth in the Federal Tort Claims Act.

12

the relief offered through administrative procedures"); *Nyhuis*, 204 F.3d at 67 (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

For federal prisoners, such as Pinson, the BOP has an administrative remedy procedure setting forth the necessary steps to exhaust a grievance pursuant to § 1997e(a). 28 C.F.R. § 542.10(a). Specifically, the BOP has a three-level administrative process through which an inmate can address issues concerning the conditions of confinement. *See id.* An inmate must first informally present the complaint to staff, and staff is to attempt to resolve the matter. 28 C.F.R. § 542.13(a). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the

13

warden, within twenty calendar days of the date of the incident. 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The inmate may then appeal to the BOP's Central Office within thirty calendar days, which office is the final administrative appeal level in the BOP. *Id.* No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. 28 C.F.R. § 542.15(a). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection. 28 C.F.R. § 541.17(b).

According to Defendants, between March 1, 2016 and November 1, 2018, Pinson filed nineteen administrative remedies with the BOP regarding issues at USP-Allenwood. (Doc. 66, ¶ 27; Doc. 66-1, pp. 59-69, Administrative Remedy Generalized Retrieval). Defendants maintain that none of those remedies pertain to the *Bivens* claims in the instant action. (Doc. 65, p. 17). The only potentially relevant administrative remedies are those remedies seeking a transfer to a different facility and the request to be housed in Unit II A. (Doc. 66, ¶ 28).

The record establishes that Pinson's remedy seeking a transfer to a different facility was only filed at the institutional level. (*Id.* at ¶ 29; Doc. 66-1, p. 60, Administrative Remedy Generalized Retrieval). The institution denied the remedy, and Pinson did not seek further

14

review with the Regional Office or the Central Office. (Doc. 66, ¶ 30). Pinson's remedy regarding the request to be housed in Unit II A was denied at the institutional level. (Doc. 66, ¶ 32; Doc. 66-1, p. 63). Pinson filed an appeal to the Regional Office level, which was denied. (Doc. 66, ¶ 33; Doc. 66-1, p. 65). The record reveals that Pinson did not appeal this denial to the Central Office. (Doc. 66, ¶ 34). Construing these remedies as potentially relevant to the claims in the second amended complaint, Pinson failed to fully exhaust these remedies. (*Id.* at ¶¶ 28-34). Pinson has not provided any evidence to refute these facts.

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp*, 219 F.3d at 281; *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). Most recently, the Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." *Shifflett v. Korszniak*, 934 F. 3d 356, (3d Cir. 2019). The record simply does not support a finding that the administrative process was unavailable to Pinson. To the contrary, it establishes that Pinson had ready access to the administrative remedy process and filed numerous administrative remedies throughout her incarceration with the BOP.

15

It is quite clear that Pinson failed to exhaust administrative remedies before initiating

the instant action. Moreover, Pinson has not demonstrated that the failure to fully pursue

such administrative relief should be excused. Thus, Pinson's claims are barred on

administrative exhaustion grounds, and Defendants Valencik, Oddo, and Heath are entitled

to summary judgment.

## 2. *Lack of Personal Involvement of Defendants Oddo and Santana*

Defendants next argue that Pinson failed to state a claim against Oddo and Santana

because they lack personal involvement in the alleged wrongs, and there is no evidence

establishing their personal involvement. (Doc. 65, pp. 19-20). The Court agrees.

Individual liability can be imposed in a civil rights action only if the state actor played

an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the

operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil

rights action must have personal involvement in the alleged wrongs. . . . Personal

involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362

(1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must

be made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

16

1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

With respect to the *Bivens* claims against Defendants Oddo and Santana, a review of the second amended complaint confirms that aside from listing them as Defendants, Pinson fails to specifically allege any personal involvement by these Defendants in any alleged constitutional deprivation. (*See* Doc. 51, pp. 2-3, 6-7). Consequently, Defendants Oddo and Santana are entitled to dismissal from this action based on lack of personal involvement in the alleged wrongs.

### 3.    *Lack of Personal Jurisdiction over Defendants Cozza-Rhodes and Santana*

Defendants argue that the Court lacks personal jurisdiction over Defendants Cozza-Rhodes and Santana, the out-of-state Defendants. (Doc. 65, pp. 20-22). Pennsylvania's long-arm statute, 42 PA. CONS. STAT. ANN. § 5322, "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" *Pennzoil Products Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). The Due Process Clause requires that nonresident defendants have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial

17

justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Id.* at 300 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Federal courts have recognized two types of personal jurisdiction, namely general and specific. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). General jurisdiction is appropriate when the defendant's contacts with the forum are "continuous and systematic" and when the cause of action "arises from the defendant's non-forum related activities." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir. 1996). Specific jurisdiction is properly exercised when the plaintiff's cause of action arises from the defendant's forum-related activities, "such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In support of the instant motion, Defendants have submitted declarations of Defendants Cozza-Rhodes and Santana.[5] (Doc. 66-1, pp. 3-4, Declaration of T.K. Cozza-Rhodes ("Cozza-Rhodes Decl."); Doc. 66-1, pp. 14-15, Declaration of J. Santana ("Santana Decl.")). Defendant Cozza-Rhodes declares that her business office is in Aurora, Colorado,

---

[5]     The Court may consider affidavits in determining the existence of personal jurisdiction. *See Patterson ex rel. Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990); *Hairston v. Lappin*, 2013 WL 5701637, *16 n.6 (M.D. Pa. 2013).

18

and she confirms that she does not live, work, or own real property in the Commonwealth of Pennsylvania. (Cozza-Rhodes Decl. ¶ 4). Defendant Santana declares that, at all relevant times, his business office was located Grand Prarie, Texas, and he confirms that he does not live, work, or own real property in the Commonwealth of Pennsylvania. (Santana Decl. ¶¶ 3-4). "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted). Pinson has neither addressed nor explained how Defendant Santana has any contacts with the State of Pennsylvania such that he reasonably would anticipate being haled into Court here. With respect to Defendant Cozza-Rhodes, Pinson claims that Cozza-Rhodes was involved in her transfer to USP-Allenwood. (Doc. 91, p. 2). However, the uncontroverted record reveals that Mark Collins, not Defendant Cozza-Rhodes, signed Pinson's Transfer Order from USP-Florence to USP-Allenwood. (Doc. 66-1, p. 6, Transfer Order Form). Pinson has failed to prove that Defendants Cozza-Rhodes and Santana have the requisite minimum contacts to subject them to the jurisdiction of this Court. *See Mellon Bank*, 983 F.2d at 554 ("[w]here the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)."). Thus, the

Court lacks personal jurisdiction over Defendants Cozza-Rhodes and Santana and they are entitled to dismissal on this ground.

## B.    FTCA Claim

The Court interprets Pinon's FTCA claims as follows: (1) Defendant Santana and other unknown individuals transferred Pinon to USP-Allenwood, at the request of Defendant Cozza-Rhodes; (2) Defendant Valencik failed to follow BOP policy by failing to separate Pinon from an inmate against whom Pinon provided information; (3) Defendants Valencik and Oddo failed to follow BOP policy by not conducting a threat assessment when Pinon informed them that an inmate was threatening to kill her; and, (4) after transferring out of USP-Allenwood, Defendants Santana and Oddo, and other unknown individuals, were responsible for designating Pinon to an institution that was not receptive to transgender inmates.  (Doc. 51, pp. 8-9).

The FTCA "provides a mechanism for bringing a state law tort action against the federal government in federal court" and the "extent of the United States' liability under the FTCA is generally determined by reference to state law." *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 362 (3d Cir. 2001) (quoting *Molzof v. United States*, 502 U.S. 301, 305, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992)).  Where a federal court is presented with a claim brought under the FTCA, it applies the law of the state in which the alleged tortious conduct occurred.  28 U.S.C. § 1346(b).

As a prerequisite to suit under the FTCA, a claim must first be presented to the

federal agency and be denied by the agency. The FTCA provides:

> An action shall not be instituted against the United States for money damages
> for injury or loss of property or personal injury . . . unless the claimant shall
> have first presented the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and sent by certified or
> registered mail.

28 U.S.C. § 2675(a). Thus, prior to commencing an FTCA action against the United States

in federal court, a plaintiff must "first present[ ] the claim to the appropriate Federal agency"

and receive a final denial "by the agency in writing and sent by certified or registered mail."

28 U.S.C. § 2675(a). "The statutory language is clear that a court does not have jurisdiction

before administrative remedies have been exhausted, and a court must dismiss any action

that is initiated prematurely." *Wilder v. Luzinski*, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000)

(citing *McNeil v. United States*, 508 U.S. 106, (1993); *Wujick v. Dale & Dale*, 43 F.3d 790,

793-94 (3d Cir. 1994)).

Moreover, a claimant must abide by the strict time requisites codified in 28 U.S.C. §

2401(b) or its tort claim under the FTCA will be "forever barred."[6] *See Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971). To sue the United States in district court and avoid violating the FTCA's express statute of limitations, a plaintiff must present the tort claim "in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b); *see also Bialowas*, 443 F.2d at 1049. Section 2401's "time bar is strictly construed." *Brown v. Camden County Counsel*, 2010 U.S. App. LEXIS 9826, *6 (3d Cir. 2010) (citing *Livera v. First Nat. State Bank of N.J.*, 879 F.2d 1186, 1195 (3d Cir. 1989)).

The record reflects that Pinson filed four administrative tort claims regarding events at USP-Allenwood. (Doc. 66, ¶ 39). On June 3, 2016, Pinson submitted claim number TRT-NER-2016-04489, alleging that staff was negligent when they gave her a razor. (*Id.* at ¶ 40). On November 29, 2016, the BOP denied tort claim TRT-NER-2016-04489. (*Id.* at ¶ 41).

On or about June 22, 2016, Pinson submitted claim number TRTNER-2016-04973,

---

[6] Title 28 United States Code section 2401(b) provides:

[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

22

alleging that staff at USP-Allenwood sent her to an outside specialist who would not prescribe pain medications, which resulted in pain and suffering. (*Id.* at ¶ 42). On December 16, 2016, tort claim TRT-NER-2016-04973 was denied. (*Id.* at ¶ 43).

On March 20, 2017, Pinson submitted claim number TRT-NER2017-03396, wherein she alleged that another inmate was threatening her for sex and when she reported the threats to the staff at USP-Allenwood, the staff did nothing, resulting in Pinson being sexually assaulted. (*Id.* at ¶ 44). On September 7, 2017, tort claim TRT-NER-2017-03396 was denied. (*Id.* at ¶ 45).

On July 3, 2017, Pinson submitted claim number TRT-NER-2017- 05395, stating that she sustained personal injuries when she attempted to remove her testicles and kill herself as a result of USP-Allenwood staff allowing her to keep a razor in her cell. (*Id.* at ¶ 46). On December 22, 2017, tort claim TRT-NER-2017-05395 was denied. (*Id.* at ¶ 47).

Pinson commenced this lawsuit on May 7, 2016 (*see* Doc. 1), before she filed her administrative tort claims. Pinson did not file her administrative tort claims with the BOP and did not receive a final decision by the agency before filing her complaint in federal court, as she is required to do under 28 U.S.C. § 2675(a). As is apparent from the record before the Court, Pinson failed to exhaust her administrative tort claims prior to filing this lawsuit. Therefore, the Court will dismiss the FTCA claim against the United States. *See McNeil v. United States*, 508 U.S. 106, 111-12, 113 S.Ct. 1980 (1996) (holding that a court is without

jurisdiction to rule on a prematurely filed FTCA action even if an agency denies the related administrative claim soon after the federal lawsuit is filed); *Accolla v. United States*, 369 F. App'x 408, 409-10 (3d Cir. 2010) (finding that the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies).

## V.   Conclusion

Based on the foregoing, Defendants' motion will be granted.  A separate Order shall issue.

Dated: September _/8_, 2019

Robert D. Mariani
United States District Judge